1
2024 CO 67 Masterpiece Cakeshop, Inc. and Jack Phillips, Petitioners v. Autumn Scardina, Respondent No. 23SC116Supreme Court of Colorado, En BancOctober 8, 2024

Certiorari to the Colorado Court of Appeals Court of Appeals
Case No. 21CA1142

Attorneys for Petitioners: James A. Campbell Jonathan A.
Scruggs Jacob P. Warner Scottsdale, Arizona

John
J. Bursch Washington, District of Columbia

Samuel
M. Ventola Denver, Colorado

Attorneys for Respondent: Fennemore Craig, P.C. John M.
McHugh Denver, Colorado

Greisen Medlock, LLC Paula Greisen Scott Medlock Denver,
Colorado

Attorneys for Amici Curiae Aaron and Melissa Klein: Jeffrey
C. Mateer David J. Hacker Kassandra L. Dulin Plano, Texas

Kniffin Law PLLC Eric Kniffin Colorado Springs, Colorado

Attorneys for Amici Curiae American Civil Liberties Union
Foundation and American Civil Liberties Union of Colorado:
Timothy R. Macdonald Sara R. Neel Anna I. Kurtz Laura Moraff
Denver, Colorado

Attorneys for Amici Curiae Americans United for Separation of
Church and State, Bend the Arc: A Jewish Partnership for
Justice, Interfaith Alliance, Methodist Federation for Social
Action, National Council of Jewish Women, and Sikh Coalition:
Arnold & Porter Kaye Scholer LLP Matthew J. Douglas
Denver, Colorado

Alex
J. Luchenitser Kalli A. Joslin Washington, District of
Columbia

Attorneys for Amicus Curiae CatholicVote.org Education Fund:
Illumine Legal LLC J. Brad Bergford Denver, Colorado

Scott
W. Gaylord Greensboro, North Carolina

Attorneys for Amicus Curiae Colorado Lesbian, Gay, Bisexual,
Transgender, and Queer Chamber of Commerce: Brownstein Hyatt
Farber Schreck, LLP Craig M. Finger Amalia Y. Sax-Bolder
Lance T. Collins Denver, Colorado

Mary
L. Bonauto Boston, Massachusetts

Attorneys for Amici Curiae Colorado LGBTQ+ Bar Association,
Colorado Hispanic Bar Association, Colorado Women's Bar
Association, and Asian Pacific American Bar Association of
Colorado: Holland & Hart LLP Tina R. Van Bockern Thomas
A. Morales Utsarga Bhattarai Elizabeth H. Titus Denver,
Colorado

Attorneys for Amici Curiae Colorado State Legislators of the
74th General Assembly Representatives Stephanie Vigil, Lorena
Garcia, Leslie Herod, Jennifer Parenti, Elizabeth Velasco,
Brianna Titone, Chad Clifford, and David Ortiz: Davis Graham
& Stubbs LLP Tess Hand-Bender Kristin L. Arthur Denver,
Colorado

Attorneys for Amici Curiae Colorado State Legislators of the
74th General Assembly Senators Mark Baisley and Kevin Van
Winkle and Representatives Brandi Bradley, Scott Bottoms, Ken
DeGraaf, and Stephanie Luck: Arrington Law Office Barry K.
Arrington Wheat Ridge, Colorado

Attorneys for Amicus Curiae Cyndol Haller: S|L Law PLLC John
C. Sullivan Cedar Hill, Texas

Nussbaum Gleason PLLC Andrew Nussbaum Colorado Springs,
Colorado

Attorneys for Amici Curiae First Amendment, Constitutional,
and Antidiscrimination Law Scholars Scott Skinner-Thompson,
Carlos A. Ball, Erwin Chemerinsky, Alan K. Chen, G.S. Hans,
Woodrow Hartzog, Jennifer Hendricks, Thomas Kadri, Suzette
Malveaux, Toni Massaro, Catherine Smith, Douglas Spencer,
Kyle C. Velte, Ari Ezra Waldman, and Lucy Williams:
Hutchinson Black and Cook, LLC Matthew A. Simonsen Kimberly
M. Hult Boulder, Colorado

Attorneys for Amici Curiae First Amendment Scholars George W.
Dent, Jr.; David K. DeWolf; Bruce P. Frohnen; Brett G.
Scharffs; and Steven D. Smith: Illumine Legal LLC Devin C.
Daines Denver, Colorado

William C. Duncan Salt Lake City, Utah

Attorneys for Amici Curiae Jewish Coalition for Religious
Liberty, Coalition for Jewish Values, Summit Ministries, The
Colson Center for Christian Worldview, American Muslim &
Multifaith Women's Empowerment Council, and World Hazara
Council USA: Covenant Law PLLC Ian Speir Colorado Springs,
Colorado

Howard
Slugh Washington, District of Columbia

Attorneys for Amicus Curiae Lambda Legal Defense and
Education Fund, Inc. Karen L. Loewy Washington, District of
Columbia

Sonja
D. Kerr Dallas, Texas

Pelecanos Los Angeles, California

Attorneys for Amici Curiae Mountain States Legal Foundation,
Americans for Prosperity Foundation, Southeastern Legal
Foundation, and Manhattan Institute: James Kerwin William E.
Trachman Lakewood, Colorado

Attorneys for Amici Curiae National Religious Broadcasters
and Foundation for Moral Law: Brown Dunning Walker Fein
Drusch PC David C. Walker Greenwood Village, Colorado

Michael P. Farris Washington, District of Columbia

Attorneys for Amici Curiae States of Arkansas, Alabama,
Alaska, Georgia, Idaho, Indiana, Iowa, Kansas, Kentucky,
Louisiana, Mississippi, Missouri, Montana, Nebraska, North
Dakota, Ohio, South Carolina, South Dakota, Tennessee, Texas,
Utah, Virginia, and West Virginia: Nicholas J. Bronni Dylan
L. Jacobs Michael A. Cantrell Little Rock, Arkansas

Nicole
C. Hunt Lakewood, Colorado

Attorneys for Amici Curiae States of Massachusetts,
Connecticut, Delaware, District of Columbia, Hawaii,
Illinois, Maine, Maryland, Michigan, Minnesota, Nevada, New
Jersey, New York, Oregon, Pennsylvania, Rhode Island,
Vermont, and Washington: Adam M. Cambier Boston,
Massachusetts

Olson
Grimsley Kawanabe Hinchcliff & Murray LLC Eric Olson
Denver, Colorado

Attorneys for Amici Curiae Tastries Bakery and Catharine
Miller: Messall Law Firm, LLC Rebecca R. Messall Englewood,
Colorado

Attorneys for Amicus Curiae U.S. Representative Doug Lamborn:
Consovoy McCarthy PLLC J. Michael Connolly Arlington,
Virginia

Telios
Law PLLC Joseph B. Brown Theresa Sidebotham Monument,
Colorado

JUSTICE HART delivered the Opinion of the Court, in which
CHIEF JUSTICE MARQUEZ, JUSTICE BOATRIGHT, and JUSTICE SAMOUR.
JUSTICE GABRIEL, joined by JUSTICE HOOD and JUSTICE
BERKENKOTTER, dissented.

OPINION

HART,
JUSTICE

¶1
The underlying constitutional question this case raises has
become the focus of intense public debate: How should
governments balance the rights of transgender individuals to
be free from discrimination in places of public accommodation
with the rights of religious business owners when they are
operating in the public market? We cannot answer that
question however, because of a threshold issue of
administrative law and statutory interpretation: Could the
district court properly consider the claims of discrimination
presented here? In light of this dispute's procedural
journey, it could not.

¶2
The dispute began when Autumn Scardina requested that
Masterpiece Cakeshop, Inc., owned by Jack Phillips, make her
a pink cake with blue frosting to celebrate her gender
transition and identity as a transgender woman. Masterpiece
refused, and Scardina filed an anti-discrimination claim with
the Colorado Civil Rights Division ("the Division")
under section 24-34-306, C.R.S. (2024). The Division found
probable cause that discrimination occurred, and after the
Division's conciliation efforts failed, the Colorado
Civil Rights Commission ("the Commission") took
jurisdiction to hold an administrative adjudication of the
claim. Once it commenced a hearing as part of this
administrative proceeding, the Commission was required,
absent a settlement among all the parties, to issue an

order stating its conclusions and the reasons why its
findings of fact supported those conclusions. §
24-34-306(8).

¶3
In the meantime, Phillips sued both the Division and the
Commission in federal court, claiming that these state
agencies were discriminating against him based on his
religion by pursuing Scardina's claim. Scardina moved to
intervene in the federal proceedings, but the district court
denied that motion. As part of a confidential settlement of
the federal case, the Division and the Commission
agreed-without participation by Scardina-to dismiss
Scardina's administrative complaint against Masterpiece
and Phillips. Pursuant to this settlement, the Commission
terminated the administrative adjudication, but it did not
issue the required order explaining its reasons for the
dismissal.

¶4
Scardina could have appealed the Commission's decision to
close the administrative adjudication without providing the
statutorily mandated order but she did not. Instead, she
brought her discrimination claim anew in the district court.
The district court took up the case and, following a bench
trial, determined that Phillips had violated section
24-34-601, C.R.S. (2024), which prohibits discrimination in
places of public accommodation, and imposed a fine. Phillips
appealed, and the court of appeals affirmed the judgment. We
granted certiorari

to determine, among other issues, whether Scardina properly
filed her case in the district court.[1] We conclude that she did
not.

¶5
Colorado's Anti-Discrimination Act, §§
24-34-301 to -707, C.R.S. (2024) ("CADA"), sets
very specific constraints on when a district court can
consider a claim of discrimination in a place of public
accommodation. The statute is designed to permit the Division
to investigate and potentially resolve such claims before
permitting an aggrieved individual to pursue an action in
district court. To that end, the version of section
24-34-306(14), C.R.S. (2017), applicable at the time that
Scardina filed her complaint required that a person exhaust
any administrative remedies before filing an action in the
district court.[2] And if the

prescribed times for filing an action in the district court
pass, and the Commission decides to hear and resolve a
complaint through an administrative adjudication, that claim
is removed from the district court path entirely.

¶6
Sections 24-34-306 and -307, C.R.S. (2024), set out these two
paths: either (1) administrative exhaustion followed by an
action in the court system under the specific circumstances
delineated by statute, or (2) administrative review followed
by an administrative adjudication and judicial appeal, if
requested. Scardina pursued the latter, the administrative
adjudication path. However, when the Commission denied her
the hearing to which she was entitled by statute, she did not
appeal that denial. That choice did not entitle her to pursue
the alternate path of filing a district court action. Nothing
in section 24-34-306 authorized her to file the claim anew in
district court.

¶7
Under these circumstances, we conclude that section 24-34-306
did not permit the district court to hear this matter. We
therefore vacate the decisions of the lower courts and
dismiss this case. And, accordingly, we do not consider the
merits of Scardina's CADA claim, nor whether
Masterpiece's conduct was protected under the First
Amendment.

I.
Facts and Procedural History

¶8
On June 26, 2017, Scardina called Masterpiece Cakeshop and
spoke with Jack Phillips's wife, who worked at the store.
Scardina requested a pink birthday

cake with blue frosting and was told that Masterpiece would
make such a cake. Scardina then explained that the cake was
intended to celebrate her transition from male to female. At
that point, she was informed that the shop was unlikely to
make the cake "because of the message." The call
disconnected, and when Scardina called back, she was again
told that the shop would not make the cake. ¶9 Scardina
filed a formal discrimination charge with the Division on
July 21, 2017, alleging that Masterpiece Cakeshop, a place of
public accommodation, had discriminated against her and
refused service because she was transgender. Scardina's
filing set in motion the Division's and the
Commission's procedural deadlines described in section
24-34-306.[3]

¶10
First, under the version of section 24-34-306(11) applicable
at the time, the agencies had 270 days from the date of her
filing to issue a written notice of a formal hearing, or the
Commission would lose jurisdiction over the case and Scardina
could file her claim in the district court. §
24-34-306(11), C.R.S. (2017). However, over the course of the
proceeding, both parties (Scardina and

Masterpiece) received 90-day extensions as permitted by
statute, ultimately moving that deadline to October 13,
2018.[4]

¶11
The Division investigated Scardina's claim and, almost a
year later, on June 28, 2018, the Division's Director
issued a probable cause determination that Masterpiece had
discriminated against Scardina on the basis of her
transgender status. The parties entered compulsory mediation,
as required by section 24-34-306(2)(b)(II).

¶12
Eventually, the Director determined that mediation was futile
and referred the matter to the Commission, in accordance with
statutory procedure. § 24-34-306(4). The Commission
issued a Notice of Hearing and Formal Complaint
("Notice") to Phillips and Masterpiece on October
9, 2018, just days before the October 13 deadline. The Notice
informed Phillips that he was to appear before an
Administrative Law Judge ("ALJ") on February 4,
2019. In that administrative proceeding, the ALJ would
determine whether Phillips violated

CADA by refusing to bake the cake that Scardina had
requested. This Notice triggered another deadline in section
24-34-306(11): The Commission now had 120 days to commence a
hearing. If the Commission failed to do so by February 6,
2019, it would lose jurisdiction over the case. §
24-34-306(11).

¶13
Shortly after receiving the Notice, on October 23, Phillips
filed a complaint in federal court, alleging violations of
his First Amendment rights by the Division, the Commission,
and other Colorado state officials. The complaint requested
injunctive, declaratory, compensatory, and punitive relief.
Phillips did not name Scardina as a party.

¶14
Meanwhile, in the state administrative proceeding, the ALJ
granted Scardina's motion to intervene through
independent counsel. The parties jointly requested that the
ALJ treat the February 4 hearing as a procedural
"commencement hearing," where the ALJ could address
procedural issues and reschedule the merits hearing for a
later date. The ALJ granted the request, and the parties
appeared before the ALJ on February 4, 2019, meeting section
24-34-306(11)'s requirement that the Commission commence
a hearing by, at the latest, February 6, 2019.

¶15
Days after the February 4 hearing, Scardina attempted to
intervene in the federal suit pursuant to Fed.R.Civ.P. 24.
Phillips opposed her motion, and the Commission took no
position. The court sided with Phillips, reasoning that

intervention was unnecessary because the Commission would
represent Scardina's interests in the federal litigation.
Masterpiece Cakeshop Inc. v. Elenis, No.
18-cv-02074-WYD-STV, 2019 WL 9514601, at *3 (D. Colo. Feb.
28, 2019). Scardina was thus unable to participate in the
federal suit.

¶16
On March 5, the federal district court announced that the
parties to the federal case (Masterpiece and the Colorado
government) had entered a confidential settlement. Scardina
was not informed of the terms of that settlement, nor are
they part of the record in this case. In an emergency
meeting, the Commission dismissed Scardina's charge
against Masterpiece and requested that the ALJ close the
case. The ALJ filed a notice of administrative closure on
March 7 and vacated the August merits hearing.

¶17
On March 22, the Commission filed a closure order noting that
"the Commission members present [at the March 5 meeting]
unanimously voted to dismiss the Notice of Hearing and Formal
Complaint" against Masterpiece and further stating that
the case was "now formally closed and all administrative
proceedings under part 3 of article 34 of title 24, C.R.S.
have been exhausted." The order did not mention the
confidential settlement in the federal case or offer any
explanation for the closure.

¶18
On June 5, Scardina filed her discrimination claim anew in a
state district court, asserting that the court was permitted
to hear her claim under section

24-34-306 because she had exhausted her administrative
remedies. Scardina's discrimination claim proceeded to a
bench trial. The trial court ultimately found that
Masterpiece had discriminated against Scardina in a place of
public accommodation, in violation of CADA. It further held
that CADA did not violate the First Amendment because it did
not compel speech or offend the right to free exercise of
religion. The trial court granted the remedy described in
section 24-34-602(1)(a), C.R.S. (2017), a $500 fine, but
declined to grant any of the other forms of relief that
Scardina requested in her complaint, such as damages or
attorney fees.

¶19
Masterpiece appealed, and a division of the court of appeals
affirmed the district court's order. Scardina v.
Masterpiece Cakeshop, Inc., 2023 COA 8, ¶ 93, 528
P.3d 926, 943. Masterpiece sought, and we granted,
certiorari.

II.
Applicable Law

¶20
The statutory scheme that establishes the two paths for
vindication of discrimination claims under CADA, including in
places of public accommodation is set forth in section
24-34-306. As we will explain, that statute sets out a path
for administrative adjudication and a path for judicial
adjudication. While both paths start with administrative
review in the Division, the statute makes it clear that once
a complainant is on one adjudicatory path (either with the
Commission or in the district court) there is no option to
jump to the other.

¶21
Masterpiece has argued consistently throughout these
proceedings that Scardina could not properly bring her claim
before the district court. We reject the specific argument
presented by Masterpiece: that an appeal pursuant to section
24-34-307, C.R.S. (2024), is part of the administrative
exhaustion required by section 24-34-306(14). But the
parties' dispute over the question of whether the
district court could properly hear Scardina's claim under
section 24-34-306 puts that question squarely before
us.[5]

¶22
The details involved in answering this question concern
matters of statutory interpretation that we review de
novo. McCoy v. People, 2019 CO 44, ¶ 37, 442
P.3d 379, 389. Our goal in reviewing a statute is to give
effect to the General Assembly's intent. Arvada Vill.
Gardens LP v. Garate, 2023 CO 24, ¶ 9, 529 P.3d
105, 107. If the language is unambiguous, we apply it as
written. Delta Air Lines, Inc. v. Scholle, 2021 CO
20, ¶ 13, 484 P.3d 695, 699.

A.
The Statutory Scheme Prohibiting Discrimination in Places of
Public Accommodation

¶23
CADA prohibits discrimination in places of public
accommodations on the basis of, among other things, gender
identity and gender expression. § 24-34-601(2)(a). If a
person (the "complainant" or "charging
party") believes that they have been discriminated
against in violation of this prohibition, they have two legal
options.

¶24
First, they can seek the imposition of a fine in a
"court of competent jurisdiction in the county where the
violation occurred." § 24-34-602(1)(a). This remedy
is exclusive and is "an alternative to that authorized
by section 24-34-306(9)." § 24-34-602(3). The
referenced "alternative"-relief under section
24-34-306-begins with an administrative review process in the
Division and then leads to adjudication before the
Commission[6] or, when specific statutory conditions are
met, adjudication in a district court. Once the complainant
starts down the administrative adjudicatory path before the
Commission, appellate

review is then available under section 24-34-307. If,
instead, one of the paths to adjudication in the district
court is satisfied, and the complainant elects that route,
appellate review is eventually available if any party wishes
to challenge the district court's final order, in
accordance with the normal rules of appellate procedure.

¶25
The question we confront in this case is whether the statute
that sets out these two paths following administrative
review-either administrative adjudication or judicial
adjudication-permits shifting from one path to the other. We
conclude that it does not.

1.
Pursuing a Claim Through Administrative Review and
Administrative Adjudication

¶26
When a complainant files a charge of discrimination with the
Division, the Division's Director and staff are required
to "make a prompt investigation of the charge,"
which can include issuing subpoenas to witnesses and
compelling the production of documents and records. §
24-34-306(2)(a). The Director then determines "as
promptly as possible" whether "probable cause
exists for crediting the allegations of the charge."
§ 24-34-306(2)(b).

¶27
If the Director finds no probable cause, they must dismiss
the charge, notify the parties of the decision, and state in
that notice that the complainant may (1) appeal the dismissal
to the Commission within ten days, or (2) file a civil action
in the district court within ninety days. §
24-34-306(2)(b)(I)(A)-(B). If the complainant chooses the
first option, and the Commission ultimately agrees with

the Director and dismisses the appeal, the complainant again
has ninety days to file an action in district court. §
24-34-306(2)(b)(I)(B). Thus, as we discuss further below, a
no-probable-cause finding (or a Commission dismissal
affirming that finding) is one of the triggers that permits
the complainant to pursue adjudication of their claim in
district court. § 24-34-306(2)(b)(I)(A)-(B); see,
e.g., Demetry v. Colo. Civ. Rts. Comm'n,
752 P.2d 1070, 1071-72 (Colo.App. 1988) (holding that a
complainant whose administrative proceeding ended with a
no-probable-cause finding could not challenge that finding
directly in the court of appeals, but rather should have
turned to district court).

¶28
If, however, the Director does find probable cause,
they must "serve the respondent with written notice
stating with specificity the legal authority and jurisdiction
of the commission and the matters of fact and law
asserted." § 24-34-306(2)(b)(II). Following that
service, the Director and their designees are obligated to
"order the charging party and the respondent to
participate in compulsory mediation" and "shall
endeavor to eliminate the discriminatory or unfair practice
by conference, conciliation, and persuasion."
Id.

¶29
At this stage in the administrative process, agency
regulations permit the Director to "resolve the charge
in the public interest by entering into a conciliation
agreement with the Respondent." Dep't of Regul.
Agencies, 3 Colo. Code Regs. 708-1:10.5(D)(5) (2022). As long
as the Director believes the conciliation terms are

reasonable-and even if the charging party does not accept
those terms-the Director may then dismiss the charge.
Id. The charging party may challenge the
Director's decision by appealing to the Commission,
id., and, if that challenge fails, filing an appeal
in the court of appeals, see Agnello v. Adolph Coors
Co., 689 P.2d 1162, 1165 (Colo.App. 1984) (upholding a
settlement agreement the Division entered into during the
conciliation process because it ended an employer's
discriminatory practice, even though the complainant did not
expressly agree to the settlement).

¶30
The Director can also determine that the mediation efforts
are "futile," in which case the Division must
report the failure of mediation to the Commission. §
24-34-306(4). At that point, the Commission may choose to
take no action at all. If that is the Commission's
choice, then the administrative process has been exhausted,
and, as we explain in more detail below, the complainant can
request a right to sue letter and pursue their claim in
district court.

¶31
Alternatively, "[i]f the [C]ommission determines that
the circumstances warrant" a hearing, it can issue
"a written notice and complaint requiring the respondent
to answer the charges at a formal hearing before the
[C]ommission, a

commissioner, or an [ALJ]."[7] Id. The notice must
state "the time, place, and nature of the hearing, the
legal authority and jurisdiction under which it is to be
held, and the matters of fact and law asserted."
Id. That hearing must commence "within [120]
days after the service of [the] written notice and
complaint." Id.

¶32
Throughout this process in the Division and continuing into
the hearing before the Commission, the complainant is a
"party." See § 24-4-102(11), C.R.S.
(2024) (explaining that "[p]arty" for purposes of
agency adjudications includes "any person or agency
named or admitted as a party"); Dep't of Regul.
Agencies, 3 Colo. Code Regs. 708-1:10.2(W) (2023) (defining
"[p]arty" as "the Charging Party/Complainant
and/or the Respondent"); see also Dep't of
Regul. Agencies, 3 Colo. Code Regs. 708-1:10.2(Y) (2014)
(defining "[p]arty" in the same manner at the time
these proceedings were taking place). Parties to the
Commission's adjudicatory proceeding are entitled to an
array of protections and processes.

¶33
Indeed, CADA is very specific about what an administrative
adjudication must include. Section 24-34-306(8) commands that
the hearing comply with the general requirements for agency
adjudicatory proceedings described in section 24-4-105,
C.R.S. (2024). Those requirements include party input in
scheduling, the

issuance of subpoenas, the option to be represented by
counsel, and other procedures that mirror adjudication in the
courts. § 24-4-105(2)(a), (4)(a), (9)(a). "[E]very
party to the proceeding shall have the right to
present his case or defense by oral and documentary evidence,
to submit rebuttal evidence, and to conduct such
cross-examination as may be required for a full and true
disclosure of the facts." § 24-4-105(7) (emphasis
added). In addition to its references to the statute that
describes the general requirements for agency adjudications,
section 24-34-306 includes its own procedures: discovery
under the Colorado rules of civil procedure (subsection (5)),
the possibility of the respondent's default with
testimony by the complainant (subsection (6)), and the power
to amend filings (subsection (7)).

¶34
Moreover, although a complainant is not required to hire a
private attorney for the hearing because the government
presents "[t]he case in support of the complaint,"
§ 24-34-306(8), the complainant has a number of
statutory and regulatory rights during the hearing process.
In addition to the rights mentioned above, the complainant is
also entitled to "reasonably and fairly amend any
complaint." § 24-34-306(7). Further, at the time
Scardina filed her complaint, the Commission's General
Rules Governing Hearing Procedures provided that "[i]f a
party presents a motion for summary judgment, the
presentation of the motion with supporting evidence may
constitute the commencement of the hearing."

Dep't of Regul. Agencies, 3 Colo. Code Regs.
708-1:10.8(6) (2014). And if the complainant wants to hire an
attorney, they can ask the ALJ for permission to additionally
"intervene through counsel to present oral testimony or
other evidence and to examine and cross examine
witnesses." Dep't of Regul. Agencies, 3 Colo. Code
Regs. 708-1:10.8(A)(5) &(B) (2014). These statutory and
regulatory procedures create an administrative adjudicatory
process with significant formality and party protections.

¶35
If the adjudicator ultimately decides that the respondent
engaged in discriminatory acts in violation of CADA, the
Commission "shall issue and cause to be served upon the
respondent an order requiring such respondent to cease and
desist from such discriminatory or unfair practice."
§ 24-34-306(9). Alternatively, if the adjudicator
determines that no discrimination occurred, the Commission
must issue an order dismissing the complaint. §
24-34-306(10). In either case, the adjudicator's written
decision "shall . . . include a statement of the reasons
why the findings of fact lead to the conclusions," a
step of specificity that, once again, goes beyond the
"findings and conclusions" typically required of
other administrative adjudicatory decisions. Compare
§ 24-34-306(8), (10), with §
24-4-105(14)(a).

¶36
Critically, "[a]ny complainant or respondent claiming to
be aggrieved by a final order of the [C]ommission, including
a refusal to issue an order, may obtain

judicial review thereof." § 24-34-307(1). Such
review "shall be brought in the court of appeals."
§ 24-34-307(2).

¶37
In sum, a complainant seeking to file a charge of
discrimination in a place of public accommodation generally
begins with the Division. Under CADA, the Division has two
opportunities to dispose of that charge over the
complainant's objection: (1) the Division may find no
probable cause for the charge, § 24-34-306(2)(b); or (2)
the Division may impose a conciliation agreement with the
respondent's participation, even over the objection of
the complainant, provided that the Division finds the terms
reasonable. Dep't of Regul. Agencies, 3 Colo. Code Regs.
708-1:10.5(D)(5) (2022).

¶38
The Commission also has an opportunity to dispose of the
charge with no action. If the Division finds probable cause
and is unable to establish a reasonable conciliation
agreement, the Commission may unilaterally terminate the
administrative process by choosing not to issue a notice of
hearing and complaint. § 24-34-306(4).

¶39
Once the Commission issues a notice of hearing and complaint
under section 24-34-306(4), however, it has decided to demand
that the respondent answer the charges originally filed by
the complainant. Accordingly, sections 24-34-306(8), (9), and
(10) require the Commission to complete the process it has
started by, among other things, issuing an order consistent
with the adjudicator's

written decision stating why the adjudicator's findings
of fact led to its conclusions. This statutory scheme does
not foreclose the parties from agreeing to settle their
dispute before completion of the agency adjudication,
something that apparently occurs with some frequency. Colo.
Off. of the State Auditor, Management of Civil Rights
Discrimination Complaints 1, 9 (Aug. 2019), https://
leg.colorado.gov/sites/default/files/documents/audits/1820p_civil_rights.pdf
[https://perma.cc/49PA-36TK] (noting that all eleven cases
the Commission set for hearing in Fiscal Year 2018 settled
before the hearing took place).

¶40
But neither the statute nor the regulations permit the
Commission to settle a complainant's charge of
discrimination with a respondent of its own accord without
the complainant's participation. Instead, absent an
agreement among all the parties, section 24-34-306(4)-(10)
requires the process the statute describes. If the parties do
not receive that process, or if any party finds the results
unfavorable, they may appeal pursuant to section 24-34-307.

2.
Pursuing a Claim Through Administrative Review and District
Court Adjudication

¶41
Section 24-34-306 provides four well-defined off-ramps from
initial administrative review by the Division to merits
litigation in the district court.

¶42
Before any of those off-ramps is available, however, section
24-34-306(14) explains that "[n]o person may file a
civil action in a district court" based on conduct
prohibited by the statute "without first exhausting the
proceedings and

remedies available to him under this part 3 unless he shows .
. . his ill health which is of such a nature that pursuing
administrative remedies would not provide timely and
reasonable relief and would cause irreparable harm."
This exhaustion requirement is designed to ensure that the
Division has an opportunity to investigate and resolve the
claim before a complainant turns to the courts for
resolution.[8] Exhaustion requirements are standard in
agency practice and serve the important purposes of
"protecting agency authority in the administrative
process and 'promoting] efficiency' in the resolution
of claims." Stewart v. lancu, 912 F.3d 693, 699
(4th Cir. 2019) (alteration in original) (quoting
Woodford v. Ngo, 548 U.S. 81, 89 (2006)) (explaining
the importance of administrative exhaustion requirements in
federal Title VII claims, upon which CADA's procedures
are based).

¶43
However, the General Assembly recognized that agency
investigation and conciliation efforts can be inefficient and
lengthy, so it established several

circumstances that have the effect of exhaustion under
section 24-34-306(14) and permit the district court to hear a
claim. The earliest off-ramp to the district court is one a
complainant can take any time after 180 days under section
24-34-306(15). Under that subsection, after 180 days have
passed since a charge was initially filed, if the complainant
requests a right to sue letter, "the division shall
promptly grant" that request-so long as the Commission
has not served a notice of a formal hearing, thereby
signaling that it will take up the claim. Id. The
grant of a right to sue letter "shall constitute final
agency action and exhaustion of administrative
remedies." Id. The complainant then has ninety
days to file following receipt of the right to sue letter, or
an action in the district court is barred. §
24-34-306(11).[9]

¶44
A second path to the district court opens if the Director
concludes that there is no probable cause to support the
claim. In this situation, section 24-34-306(2) requires the
Director to notify the charging party that they can file
"a civil action in a district court in this state based
on the alleged discriminatory or unfair practice

that was the subject of the charge filed with the
commission," but that such a claim must be filed within
ninety days. The statute also clarifies that failure to
follow this timeline means that "the action will be
barred, and no district court shall have jurisdiction to hear
the action." § 24-34-306(2)(b)(I)(C).

¶45
Third, under the version of the statute in effect at the time
of Scardina's complaint, if the Director did not serve
the respondent with a written notice of a formal hearing
under section 24-34-306(4) within 270 days of the initial
charge being filed, the Commission's jurisdiction ceased,
and the charging party could file a complaint in the district
court. § 24-34-306(11). The parties could, "for
good cause," obtain extensions of this 270-day timeline,
not to exceed ninety days per party or 180 days overall
(meaning that the timeline could not, in any circumstance, be
extended past 450 days). Id.[10] If that
timeline passed without the Commission taking jurisdiction by
serving notice of a formal hearing, the Commission lost its
jurisdiction over the complaint. In that case, a district
court complaint must be filed within ninety days of the
Commission's loss of jurisdiction, or the action would be
barred in the district court. Id.

¶46
Fourth, if the Commission does not hold a hearing within 120
days following the issuance of a notice of a formal hearing
under section 24-34-306(4),

the Commission loses jurisdiction, and the charging party may
file a complaint in the district court. § 24-34-306(11).
As with service of the written notice, the parties may ask
for extensions to this time for good cause, not to exceed
ninety days per party or 180 days collectively. §
24-34-306(11). The charging party has ninety days following
the deadline to file an action in the district court, or the
action is barred in the district court. Id.

¶47
These provisions of section 24-34-306 are unambiguous.
Subsections 306(2), 306(11), and 306(15) establish the
General Assembly's intent to impose a strict timeline on
when complainants may pursue their case in the district court
following either (1) a finding of no probable cause by the
Director, or (2) termination of the Commission's
exclusive powers over a claim for failure to meet a statutory
deadline. Each provision describes a situation where the
district court may consider a claim of discrimination because
the administrative agencies' ability to do so has ceased,
with the "apparent purpose of . . . avoid[ing]
duplicative and possibly conflicting attempts to pursue
relief both in the district court and before the
Commission." Cont'l Title Co. v. Dist. Ct.,
645 P.2d 1310, 1316 (Colo. 1982).

¶48
Significantly, the specificity of the conditions each
provision sets forth necessarily implies that complainants
may not file absent those conditions. It would make little
sense for the General Assembly to restrict access to district

courts to complainants who find themselves in certain
circumstances if litigants had a general right, external to
the statute, to pursue their case in the district court
absent those circumstances.

III.
Application

¶49
Irrespective of the merits of Scardina's claim, the
district court here was not permitted to consider her case.
Masterpiece has argued as much throughout this litigation,
though for reasons slightly different than those we rest on
here. When we are interpreting statutes, we are not obligated
to adopt the parties' interpretations that are contrary
to the text of the statute and the intent of the General
Assembly. Rather, we have an obligation to interpret and
apply the law. In this case, having been steered in this
direction by Masterpiece's arguments that Scardina
improperly filed her claim anew in the district court, we
must address the fact that section 24-34-306 did not
authorize the district court to hear this case. As noted
above, section 24-34-306 authorizes complainants to pursue
their case in the district court in four circumstances. The
proceedings here did not trigger any of those circumstances.

¶50
First, Scardina could have requested a right to sue letter
any time after 180 days from when she filed her initial
charge, up to the day the Commission served the notice of a
formal hearing. § 24-34-306(11), (15). Scardina never
requested or

received such a letter, so she could not have filed an action
in the district court under this provision.

¶51
Second, section 24-34-306(2) permits filing an action in the
district court when the Director makes an initial finding of
no probable cause. But the Director here found probable cause
to investigate Scardina's claim, so Scardina could not
have filed an action pursuant to section 24-34-306(2).

¶52
Third, section 24-34-306(11) at that time permitted filing an
action in the district court when the Commission failed to
issue a notice of hearing within 270 days of the initial
charge. While the Commission sent the notice more than 270
days after the initial charge, the parties had obtained
extensions (pursuant to section 24-34-306(11)) which placed
the October 8 notice of hearing date within the statutory
deadline.

¶53
Finally, section 24-34-306(11) permits filing an action in
the district court when the Commission fails to commence a
hearing within 120 days of the initial notice of hearing. In
this case, an ALJ held a commencement hearing within the
statutory deadline. Though the hearing was not substantive,
it was still "a hearing," satisfying section
24-34-306(11)'s requirement and ensuring that the
Commission retained jurisdiction over the case.

¶54
At no point did the Commission's or Scardina's
actions trigger one of the avenues that section 24-34-306
provides for filing a district court case. But Scardina

argues, and the court of appeals concluded, that the order
the Commission issued when it dismissed the formal complaint
against Masterpiece allowed Scardina to bring her claim in
the district court.

¶55
One version of the argument Scardina makes is that the
closure order satisfied subsection 306(14)'s
administrative exhaustion requirement, thereby giving her the
right to file an action in the district court, because the
order stated that the case was "now formally closed and
all administrative proceedings under part 3 of article 34 of
title 24, C.R.S. have been exhausted." The flaw in this
argument is that subsection 306(14) does not grant an
affirmative right-as it might if it were worded like
subsections 306(2) and 306(11), which explicitly permit
complainants to file a civil action in the district court
under the circumstances those statutes describe. Instead,
subsection 306(14) explains that administrative exhaustion is
a prerequisite to a district court case. Compare
§ 24-34-306(11), C.R.S. (2017) ("[i]f written
notice that a formal hearing will be held is not served
within two hundred seventy days after the filing of the
charge . . . the jurisdiction of the commission over the
complaint shall cease, and the complainant may seek the
relief authorized . . . by filing a civil action in the
district court for the district in which the alleged
discriminatory or unfair practice occurred"),
with § 24-34-306(14), C.R.S. (2017) ("[n]o
person may file a civil action in a district court in this
state based on an alleged discriminatory or unfair practice .
. . without first

exhausting the proceedings and remedies available to him
under this part 3 ...."). Thus, administrative
exhaustion is necessary, but not sufficient. As explained
above, subsection 306 sets out additional requirements before
the district court may hear a claim.

¶56
Another version of this argument is that the closure order
was effectively a right to sue letter. Again, this argument
fails. Section 24-34-306(15) explicitly states that a right
to sue letter can be requested "at any time prior to
service of a notice and complaint pursuant to subsection (4)
of this section." In other words, once the Commission
has taken up a claim by serving notice of a hearing, a
complainant cannot request and neither the Division nor the
Commission can issue a right to sue letter. At that point,
the statute provides unambiguously that the path to the
district court is closed, with only one exception: if the
hearing is not held promptly. § 24-34-306(11).

¶57
A third version of the argument is that the Commission's
order was not a final order because a final order must do
more than this summary dismissal did. See Scardina,
¶24, 528 P.3d at 933 ("A final judgment is one
'which ends the particular action in which it is entered,
leaving nothing further for the court pronouncing it to do in
order to completely determine the rights of the parties
involved.'" (quoting D.H. v. People, 561
P.2d 5, 6 (Colo. 1977))). Even assuming we agreed with this
characterization of the Commission's order, section
24-34-307(1)

also permits a "complainant" to challenge the
Commission's "refusal to issue an order" in the
court of appeals. Under these circumstances, the
Commission's closure order represents the culmination of
just such a refusal.

¶58
Specifically, the Commission entered into a confidential
settlement in federal court, without Scardina's
participation, in possible violation of its statutory
obligation to hold a merits hearing on a discrimination claim
and to issue an order resolving that claim in accordance with
section 24-34-306(8)-(10). This occurred after the Commission
notified the respondent that there would be an ALJ
adjudication and after the ALJ granted Scardina's motion
to intervene through counsel in that adjudication. Thus,
Scardina was entitled to the administrative processes
described in sections 24-34-306(5)-(10), unless she settled
the case with Masterpiece. The Commission's issuance of a
closure order deprived her of that process and any potential
administrative remedy or settlement.

¶59
We conclude that these circumstances amount to the kind of
"refusal to issue an order" that section
24-34-307(1) contemplates. Accordingly, Scardina had a
statutorily established path to challenge the
Commission's actions: she could have turned to the court
of appeals to contest the Commission's dismissal of her
case as part of a binding settlement in federal court, where
she was not a party. We express no view on the merits of
these claims; we only acknowledge that Scardina possessed an
avenue for judicial review in the court of appeals.

IV.
Conclusion

¶60
CADA is not ambiguous. It is quite clear about when a
litigant may file an action in the district court. The
litigant can ask for and receive a right to sue letter; the
Division can issue a finding of no probable cause; the
Commission can fail to issue a notice of a formal hearing
within 270 days of the filing of a charge; or the Commission,
having noticed a hearing, can delay the hearing more than 120
days. In the absence of those specific circumstances, a
litigant cannot file a CADA action in the district court.

¶61
None of the circumstances that permit an action in the
district court occurred here. We therefore vacate both the
division's and the district court's orders and
dismiss this case. In so doing, we express no opinion about
the merits of Scardina's claims, and nothing about
today's holding alters the protections afforded by CADA.

¶62
JUSTICE HART delivered the Opinion of the Court, in which
CHIEF JUSTICE MARQUEZ, JUSTICE BOATRIGHT, and JUSTICE SAMOUR
joined. JUSTICE GABRIEL, joined by JUSTICE HOOD and JUSTICE
BERKENKOTTER, dissented.

JUSTICE GABRIEL, joined by JUSTICE HOOD and JUSTICE
BERKENKOTTER, dissenting.

¶63
Autumn Scardina called Masterpiece Cakeshop, Inc. to order a
custom birthday cake. Specifically, she asked if Masterpiece
could make her a pink cake with blue frosting, a type of cake
that Masterpiece's co-owner, Jack Phillips, later agreed
has no inherent meaning and expresses no message. Masterpiece
agreed to make the cake. But then, Scardina said that the
cake reflected the fact that she had come out as transgender
on her birthday. At that point, Masterpiece refused to make
the cake.

¶64
On these undisputed facts, every factfinder and judicial
officer to have heard this case concluded that (1)
Masterpiece's conduct violated the Colorado
Antidiscrimination Act, §§ 24-34-601 to -605,
C.R.S. (2024) ("CADA"), because but for
Scardina's protected status, Masterpiece would have made
the cake; and (2) enforcing CADA in these circumstances would
not violate Phillips's rights to free speech or the free
exercise of his religious beliefs. Masterpiece then came to
this court, asking us to reverse those rulings.

¶65
The majority now declines to reach the merits of this case.
Instead, it erroneously gives Masterpiece and Phillips a
procedural pass. It does so by concluding that the district
court lacked the authority to hear Scardina's case,
relying on reasoning that no party presented in this case
(even after we issued an order requiring supplemental
briefing on the question of the court's authority) and

all but ignoring the argument that the parties actually
presented to us, namely, that Scardina had failed to exhaust
her administrative remedies. (To the extent that the majority
addresses the exhaustion argument presented by Masterpiece
and Phillips, it rejects that argument. Maj. op. ¶¶
21, 42 n.8.)

¶66
The ramifications of the majority's ruling are troubling
on many levels. Procedurally, the majority adopts an
unprecedented administrative regime under which, once a
merits hearing is set, (1) a district court can never hear
the matter; and (2) an administrative agency may never settle
the matter over a claimant's objection, no matter how
unreasonable that objection may be, but instead must litigate
the matter to its conclusion. In my view, neither law nor
sound policy supports such a conclusion.

¶67
Substantively, the majority's ruling throws Scardina
completely out of court and deprives her of the opportunity
to seek a remedy for alleged discriminatory conduct based on
a novel interpretation of law that no party asserted and, to
my knowledge, no court has adopted. Moreover, although the
majority rules solely on procedural grounds, I am concerned
that Masterpiece and Phillips will construe today's
ruling as a vindication of their refusal to sell
non-expressive products with no intrinsic meaning to
customers who are members of a protected class (here, the
LGBTQ+ community) if Phillips opposes the purpose for which
the customers will

use the products. Such a claim, though unfounded, could
detrimentally impact those affected by such conduct.

¶68
Because I have significant concerns about the foregoing
substantive and procedural consequences of the majority's
ruling, I respectfully dissent.

I.
Factual and Procedural Background

¶69
Scardina called Masterpiece to order a cake.
Masterpiece's co-owner and Phillips's wife, Debra,
answered the phone. Scardina told Ms. Phillips that she
wanted to purchase a custom birthday cake for six to eight
people and that she wanted the cake to be pink with blue
frosting. She did not request that the cake have any words or
symbols. Ms. Phillips responded that Masterpiece could make
that cake in the time frame requested.

¶70
Scardina thanked Ms. Phillips and then explained that the
design reflected the fact that Scardina had transitioned from
male to female and had come out as transgender on her
birthday. At this point, Ms. Phillips changed her position
and stated that Masterpiece could not make the requested
cake. Scardina asked Ms. Phillips to repeat what she had said
so that Scardina's brother, with whom she was riding in a
car, could hear it. At that point, Ms. Phillips went to get
Phillips, but the call disconnected before Phillips could get
on the phone.

¶71
Scardina immediately called back, and she spoke with the
Phillips's daughter, Lisa Eldfrick. Scardina reiterated
her request for a custom pink cake

with blue frosting, and she repeated that she was requesting
this cake because her birthday coincided with the date on
which she came out as transgender. Ms. Eldfrick responded
that Masterpiece could not make the requested cake.

¶72
Although Phillips never spoke to Scardina, he later explained
that because of his religious beliefs, he cannot design cakes
that promote sex changes, gender transitions, or "the
idea that a person's sex is anything other than an
immutable God-given biological reality." He thus
confirmed that he could not make the requested cake for
Scardina, even though he conceded that a pink cake with blue
frosting itself has no "particular inherent
meaning" and does not express any message. It appears
undisputed that Phillips would have made the same pink and
blue cake for other customers and would have sold an
identical, pre-made cake (as opposed to a custom-made cake)
to Scardina, even if she had disclosed her intended use of
the cake.

¶73
On July 21, 2017, Scardina filed a charge with the Colorado
Civil Rights Division (the "Division"), alleging
that Masterpiece and Phillips had violated CADA by refusing
to sell her a custom pink cake with blue frosting because of
her status as a transgender woman. The Division investigated
and on June 28, 2018, found probable cause to conclude that
Masterpiece's and Phillips's conduct violated CADA
because they had refused to serve Scardina based on her

transgender status. The Division then ordered the parties to
mediate, but the mediation was ultimately unsuccessful.

¶74
Thereafter, on August 14, 2018, Masterpiece and Phillips sued
the director and members of the Division, among others, in
federal court. Then, two months later, on October 9, 2018,
the Commission filed and served on Masterpiece and Phillips a
Notice of Hearing and Formal Complaint seeking equitable
relief. This notice was timely, given that the parties had
requested extensions of the deadline for issuing the notice,
which extensions the Colorado Civil Rights Commission (the
"Commission") was authorized to grant under the
version of CADA then in effect. See §
24-34-306(11), C.R.S. (2019).

¶75
Shortly after the Commission filed its Notice of Hearing and
Formal Complaint, Scardina filed a motion for leave to
intervene in the administrative proceeding, and the
Commission granted that motion. Notably, as an intervenor,
Scardina could not bring a claim in her individual capacity,
but her counsel could present oral testimony or other
evidence and could examine and cross-examine witnesses at the
hearing on the merits, if any, in this matter. Dep't of
Regul. Agencies, 3 Colo. Code Regs. 708-1:10.7(A)(5) (2023)
(previously numbered 708-1:10.8(A)(5)).

¶76
Thereafter, on February 4, 2019, the Commission conducted
what it called a "Commencement Hearing" and set the
merits hearing for August 28, 2019. The

parties apparently agreed to a Commencement Hearing to
satisfy the 120-day deadline for commencing a hearing after a
notice of hearing and formal complaint are served. §
24-34-306(4), C.R.S. (2024) (unless otherwise noted,
citations to section 24-34-306 are to those portions of the
current version of the statute that were also in effect at
the times relevant to this case).

¶77
In the meantime, Masterpiece's federal lawsuit proceeded,
and on February 8, 2019, Scardina filed a motion for leave to
intervene in that case. Masterpiece, however, opposed
Scardina's motion, arguing that any interest that she
might have in the proceeding was merely incidental. The
federal district court denied the motion, concluding that the
Division could properly represent Scardina's interests.

¶78
About one month later, the Division and Masterpiece reached a
confidential settlement of the federal lawsuit. Scardina was
not a party to that settlement, she apparently was not aware
that it was occurring, and it appears that, to this day, the
terms of the settlement have not been disclosed to her. Nor
have they been disclosed to us.

¶79
On March 5, 2019, presumably in accordance with the terms of
the Division's and Masterpiece's settlement
agreement, the Commission conducted an emergency meeting and
decided to dismiss with prejudice its Notice of Hearing

and Formal Complaint in this matter. Scardina was not
informed of this meeting until after it had occurred.

¶80
That same day, the Attorney General filed a Notice of
Dismissal and Petition for Administrative Closure, and two
days later, the administrative law judge ("ALJ")
assigned to this case issued an Order of Administrative
Closure. In this Order, the ALJ noted that the Commission had
voted to dismiss with prejudice its administrative complaint.
Accordingly, after observing that "[t]here is . . . no
need for any further proceedings before the Office of
Administrative Courts," the ALJ administratively closed
the matter and vacated the merits hearing that had been
scheduled to begin on August 28, 2019.

¶81
Two weeks later, on March 22, 2019, the Commission entered a
Closure Order, recounting that the Commission had voted to
dismiss its formal complaint and stating that the matter is
now "formally closed." This order further declared,
"[A]ll administrative proceedings under part 3 of
article 34 of title 24, C.R.S. have been exhausted." At
no time did Masterpiece or Phillips challenge the
Commission's finding in this regard (or its right to make
that finding), although before us, they have advanced a legal
argument that Scardina did not, in fact, exhaust her
administrative remedies.

¶82
Scardina then filed the present lawsuit in the Denver
District Court. Masterpiece and Phillips moved to dismiss on
the ground that Scardina had failed

to exhaust her administrative remedies, but the district
court denied that motion, and the case proceeded to a bench
trial. At the conclusion of the trial, the court found that
Masterpiece and Phillips had violated CADA by refusing to
serve Scardina because of her transgender status. The court
further found that enforcing CADA in the circumstances
presented did not violate Masterpiece's or Phillips's
rights to free speech or religious expression.

¶83
Masterpiece and Phillips appealed, reiterating their argument
that Scardina had failed to exhaust her administrative
remedies and contending that their decision not to make the
cake that Scardina had requested was based on their religious
beliefs and their right to be free from compelled speech that
would violate those beliefs. Scardina v. Masterpiece
Cakeshop, Inc., 2023 COA 8, ¶¶ 1-2, 528 P.3d
926, 930. In a unanimous, published opinion, a division of
our court of appeals rejected Masterpiece's and
Phillips's exhaustion argument and affirmed the district
court's judgment on the merits. Id. at
¶¶ 1, 21-28, 93, 528 P.3d at 930, 933-34, 943.

¶84
We then granted certiorari, and after receiving the
parties' briefs and hearing their oral arguments, we
requested supplemental briefing, asking the parties to file
briefs addressing, among other things, "whether, given
the deadlines set forth in the version of section 24-4-306,
C.R.S. in effect at the relevant time, the district court had
jurisdiction to hear Ms. Scardina's claim of
discrimination." The

parties thereafter filed supplemental opening and answer
briefs. None of these supplemental briefs raised or addressed
the argument on which the majority today relies to conclude
that the district court lacked the authority to decide this
case. Instead, as pertinent here, Masterpiece and Phillips
simply renewed their argument that Scardina had failed to
exhaust her administrative remedies, and for that reason, the
district court lacked the authority to hear this case.

II.
Analysis

¶85
I begin with a brief discussion of the party presentation
principle, and I note my concern regarding the majority's
decision to dispose of this case based on an argument that no
party has presented. I then address the majority's
position regarding the district court's authority to hear
this case, explaining why I believe that the district court
had such authority. I end by addressing and rejecting the
exhaustion argument that the parties presented, and I explain
why I believe we should have reached the merits here.

A.
The Party Presentation Principle

¶86
The Supreme Court has succinctly described the party
presentation principle:

In our adversary system, in both civil and criminal cases, in
the first instance and on appeal, we follow the principle of
party presentation. That is, we rely on the parties to frame
the issues for decision and assign to courts the role of
neutral arbiter of matters the parties present.... [A]s a
general rule, "[o]ur adversary system is designed around
the premise that the parties know what is best for them, and

are responsible for advancing the facts and arguments
entitling them to relief."

¶87
Greenlaw v. United States, 554 U.S. 237, 243-44
(2008) (second alteration in original) (quoting Castro v.
United States, 540 U.S. 375, 386 (2003) (Scalia, J.,
concurring in part and concurring in the judgment)); accord
United States v. Sineneng-Smith, 590 U.S. 371,
375-76 (2020); Compos v. People, 2021 CO 19, ¶
35, 484 P.3d 159, 165.

¶88
The party presentation principle not only ensures that courts
will exercise judicial restraint and maintain neutrality in
deciding cases but also protects due-process interests by
affording a party notice and a full and fair opportunity to
be heard before a court decides an issue adversely to that
party. See United States v. Campbell, 26 F.4th 860,
895 (11th Cir. 2022) (Newsom and Jordan, JJ., dissenting).

¶89
Here, as noted above, and as the majority concedes, Maj. op.
¶¶ 21, 49, Masterpiece and Phillips did not make
the argument on which the majority relies, even after we
issued an order requiring that they submit supplemental
briefing addressing the district court's authority in
light of the applicable statutes. In such a case, I believe
that it is particularly important for a court not to raise
and rely on arguments of its own derivation, so as not to
open itself to questions about its proper role or neutrality.

¶90
Nor do I believe that we can justify ruling on the basis of
an argument that no one made by labeling the issue
"jurisdictional." To be sure, when a question

exists as to our or a trial court's subject matter
jurisdiction, we have an obligation to address it, even if
the parties have not raised it or are prepared to concede
jurisdiction. Bender v. Williamsport Area Sch.
Dist., 475 U.S. 534, 541 (1986); People v.
S.X.G., 2012 CO 5, ¶ 9, 269 P.3d 735, 737. This is
because we must satisfy ourselves that we have jurisdiction
to hear and act in a given case. S.X.G., ¶ 9,
269 P.3d at 737.

¶91
As the majority appears to acknowledge, however, Maj. op.
¶ 21 n.5, this case presents no question of either our
or the district court's subject matter jurisdiction.
"Subject matter jurisdiction concerns a court's
authority to deal with the class of cases in which it renders
judgment." Wood v. People, 255 P.3d 1136, 1140
(Colo. 2011). A court has subject matter jurisdiction when
the People or the legislature have empowered the court to
entertain the type of case before it. Id. In this
state, district courts are courts of general jurisdiction,
and they have original jurisdiction in "all civil,
probate, and criminal cases, except as otherwise
provided" in the Colorado Constitution. Colo. Const.
art. VI, § 9(1). Moreover, although the legislature may
limit courts' subject matter jurisdiction, "such
limitations must be explicit." Wood, 255 P.3d
at 1140.

¶92
Here, the Colorado Constitution granted the district court
subject matter jurisdiction to hear this case. Moreover,
nothing in CADA (or anywhere else) explicitly
limited the district court's subject matter jurisdiction
over this case.

Accordingly, in my view, this case does not implicate any
question of the district court's subject matter
jurisdiction. At most, it implicates that court's
authority to enter a judgment within a class of cases that it
was empowered to entertain. See People in Int. of J.W. v.
C.O., 2017 CO 105, ¶¶ 24-25, 406 P.3d 853,
858-59 (distinguishing between a court's subject matter
jurisdiction over a class of cases and its authority to enter
a particular judgment within that class, and noting that when
a case falls within the class of cases that a court may hear,
the court has subject matter jurisdiction over the case). I
am aware of no authority, however, requiring us to raise, on
our own, the issue of a court's authority to enter a
judgment in a class of cases in which it has subject matter
jurisdiction.

¶93
Finally, I am unpersuaded by the majority's assertion
that when we interpret a statute, we have an obligation to
interpret the statute correctly, even if the party did not
raise an issue regarding the matter on which the court
decides to opine. Maj. op. ¶ 49. I understand and
appreciate the majority's concern about issuing an
opinion reciting an erroneous statutory construction. But
here, because no party has asked us to opine on the issue
that the majority raises on its own, addressing only the
issues that the parties raised poses no risk of enshrining an
erroneous construction of CADA into our case law. Indeed,
because no party raised the issue on which the majority's
decision rests, this case strikes me as a poor vehicle for
addressing that issue. In addition, for the reasons that I
discuss

below, I respectfully believe that it is the majority's
interpretation that enshrines an error into law. And the
majority's creation of what appears to be a
duty-to-get-it-right exception to the party presentation
principle (or an exception that allows the court to address
any issue that it would like, as long as the party steered
the court in a certain direction, id.) creates a
substantial loophole in the party presentation principle and
dramatically alters long-settled tenets of preservation and
waiver. I would not adopt such exceptions, for fear that they
will swallow the rule.

¶94
For these reasons, I do not believe that it was appropriate
for the majority to rule on the basis of an argument that no
party presented, and for that reason alone, I respectfully
dissent.

B.
The District Court Had the Authority to Hear This
Case

¶95
Even had I thought it appropriate for us to address the issue
of the district court's authority that the majority
raised and resolved on its own, I would conclude that the
district court had the authority to entertain this case and
to enter the judgment that it did.

¶96
The majority concludes that once the Commission decides to
hold an administrative hearing, Scardina could no longer file
suit in district court. Maj. op. ¶¶ 6, 20.
Accordingly, in the majority's view, after the Commission
and Masterpiece settled the claim without Scardina's
knowledge or consent and the

Commission dismissed the matter with prejudice and concluded
that Scardina had exhausted her administrative remedies,
Scardina's only option was to appeal the Commission's
failure to enter a ruling on the merits of her claim.
Id. at ¶¶ 6, 59. In my view, this
conclusion is not supported by the text of CADA, and it is
contrary to sound public policy.

¶97
Section 24-34-306 expressly states when the jurisdiction of
the Commission and of the district court come to an end.

¶98
Specifically, section 24-34-306(2)(b)(I)(C) provides that
"if the charging party does not file an action within
the time limits specified in sub-subparagraph (B) of this
subparagraph (I) [setting forth the deadlines by which a
charging party must file a civil action after the Division
makes a no probable cause determination], the action will be
barred, and no district court shall have jurisdiction to
hear the action." (Emphasis added.)

¶99
Section 24-34-306(11), C.R.S. (2019), in turn, provided, at
the time pertinent here:

If written notice that a formal hearing will be held is not
served within two hundred seventy days after the filing of
the charge, if the complainant has requested and received a
notice of right to sue pursuant to subsection (15) of this
section, or if the hearing is not commenced within the
one-hundred-twenty-day period prescribed by subsection (4) of
this section, the jurisdiction of the commission over the
complaint shall cease, and the complainant may seek the
relief authorized under this part 3 and parts 4 to 7 of this
article against the respondent by filing a civil action in
the district court for the district in which the alleged
discriminatory or unfair practice occurred. Such

action must be filed within ninety days of the date upon
which the jurisdiction of the commission ceased, and if not
so filed, it shall be barred and the district court shall
have no jurisdiction to hear such action. If any party
requests the extension of any time period prescribed by this
subsection (11), such extension may be granted for good cause
by the commission, a commissioner, or the administrative law
judge, as the case may be, but the total period of all such
extensions to either the respondent or the complainant shall
not exceed ninety days each, and, in the case of multiple
parties, the total period of all extensions shall not exceed
one hundred eighty days.

(Emphases added.)

¶100
Here, as noted above, the Division found probable cause to
support Scardina's claim, so section
24-34-306(2)(b)(I)(C) does not apply, and that section did
not deprive the district court of jurisdiction or of the
authority to hear this case. In addition, it appears
undisputed that the Commission timely served a notice of
hearing and formal complaint, after several extensions that
were expressly authorized by section 24-34-306(11), C.R.S.
(2019); Scardina never requested or received a notice of a
right to sue under that subsection; and the hearing was
commenced within that subsection's 120-day time limit.
Accordingly, none of these provisions operated to end the
Commission's jurisdiction. Nor did they start the clock
for filing a civil action in district court. As a result, in
my view, the Commission retained jurisdiction until March 22,
2019, when it dismissed Scardina's case with prejudice,
concluded that she had exhausted her administrative remedies,
and closed the matter. It is only then, at the earliest, that

the time for Scardina to file her lawsuit in the Denver
District Court began to run, and she timely filed that action
within ninety days.

¶101
For several reasons, I am not persuaded otherwise by the
majority's view that the district court lost (or could
never obtain) the authority to hear this case once the
Commission set a hearing on the merits of Scardina's
claim.

¶102
First, nothing in either CADA or its implementing regulations
says any such thing. To the contrary, as noted above, CADA
and its regulations expressly state when the jurisdiction or
authority of the Commission and of the district court ceases
or is precluded, and none of those provisions apply here. The
majority nevertheless reads into these express (albeit
inapplicable) limitations what it deems to be a further,
implicit, limitation, namely, that section 24-34-306 provides
the exclusive means by which a district court obtains the
authority to hear a case like this. Maj. op. ¶¶ 48,
54. The majority, however, offers no support for its view
that an express limitation of authority somehow
implies an exclusive grant of authority, and I have
seen no law supporting such a position. To the contrary, in
my view, the majority's novel interpretation flips the
statutory language on its head.

¶103
Second, the majority's conclusion is contrary to sound
public policy. Under the majority's view, once the
Commission issues a notice of hearing and complaint, it may
never settle a claim and dismiss its own complaint,
absent the charging

party's knowledge, participation, and consent.
Id. at ¶ 40. Further, a charging party can
force an administrative agency to proceed through a hearing
and to a merits decision simply by stubbornly refusing to
consent to a settlement, no matter how reasonable the agency
acted on the facts before it. See id. I perceive
nothing in CADA or its implementing regulations that so
provides, and neither Masterpiece nor the majority cites any
authority to support such an argument. Moreover, in my view,
these outcomes would result in a substantial waste of
administrative resources, and I cannot discern a legitimate
policy rationale for such a result. Indeed, I expect that
administrative agencies throughout Colorado will be quite
surprised (and perhaps alarmed) to learn that their authority
to settle actions has now been so significantly curtailed.

¶104
Contrary to my colleagues in the majority, I would not adopt
such a rule. Rather, I believe that sound public policy
supports authorizing administrative agencies to resolve
matters before them, even over a charging party's
objection, and then allowing that party to pursue their claim
in district court. Such a procedure best ensures a prompt
result on the merits, which I believe is the end to which
CADA and its implementing regulations are directed. See
Brooke v. Rest. Servs., Inc., 906 P.2d 66, 71 (Colo.
1995) (noting that CADA's primary purpose is to eliminate
unfair or discriminatory practices defined in that statute).

¶105
Third, although the majority concludes that Scardina should
have appealed from the Commission's order dismissing and
closing her case, I do not believe that the law supports such
a conclusion. Moreover, in my view, the court of appeals
would not have had jurisdiction over any such appeal, and
even if it did, it is not clear to me what that appeal would
have entailed.

¶106
Specifically, in support of its argument that Scardina should
have filed an appeal in the court of appeals, the majority
cites sections 24-34-307(1) and (2), C.R.S. (2017), which
provide that a complainant aggrieved by "a final order
of the commission, including a refusal to issue an order, may
obtain judicial review thereof," with such review to be
sought in the court of appeals. Maj. op. ¶ 36. As the
majority appears to acknowledge, however, the
Commission's order was not a final order.
See id. at ¶¶ 57-59. Indeed, the gist of
the majority's ruling appears to be that Scardina should
have appealed to the court of appeals precisely because she
never received a final order on the merits from the
Commission. See id. at ¶ 59. Nor do I agree
that the Commission's order was a "refusal to issue
an order." See id. The Commission did
issue an order, namely, an order dismissing the case and
concluding that Scardina had exhausted her administrative
remedies, thereby ending the matter. Accordingly, I do not
believe that sections 24-34-307(1)-(2) support the
majority's position here.

¶107
In any event, because the Commission's dismissal and
closure orders were not final orders, the court of appeals
would not have had jurisdiction to hear an appeal had
Scardina filed one.

¶108
In this regard, I believe that Demetry v. Colorado Civil
Rights Commission, 752 P.2d 1070 (Colo.App. 1988), which
has been on the books for nearly forty years, is directly on
point. In that case, the director of the Division found no
probable cause to sustain Demetry's charge of
discrimination, the Commission affirmed, and Demetry
appealed. Id. at 1070. Although the no probable
cause determination and the Commission's decision to
affirm that determination ended all of the administrative
proceedings in that case, the Commission contended that its
decision to affirm the no probable cause determination did
not constitute final agency action subject to appellate
review and thus, the court of appeals division lacked
jurisdiction over Demetry's appeal. Id. at 1071.
The division agreed. Id.

¶109
The division so concluded notwithstanding the fact that the
charging party was a complainant who was obviously aggrieved,
id., as the majority says Scardina was here, Maj.
op. ¶ 36. The division reasoned that "[f]or an
order to be final, it must have some determinative
consequences for the party to the proceeding."
Demetry, 752 P.2d at 1071. In other words,
"[t]he order must establish the rights and obligations
of the parties." Id.

¶110
In support of this conclusion, the division looked to federal
case law construing Title VII of the Civil Rights Act of 1964
and observed that the purpose of any investigation by the
federal Equal Employment Opportunity Commission
("EEOC") was "merely preparatory to further
proceedings." Id. at 1071-72. Thus, the
division opined, if the EEOC finds no probable cause, then
the charging party may bring a private cause of action.
Id. at 1072.

¶111
The division found this reasoning to be equally applicable to
the CADA claim before it. Id. Specifically, the
division observed that the Commission's decision not to
prosecute Demetry's discrimination charge
administratively bore "no indicia of a final order.
There has been no hearing on, or adjudication of, the merits
of the charge, nor has there been a determination of the
legal rights of the employer and employee." Id.
Thus, because there had been no final decision that would
afford the court of appeals division jurisdiction to hear the
matter, the Commission's decision did not affect
Demetry's right to bring an action in district court
under section 24-34-306(11), C.R.S. (2019). See
Demetry, 752 P.2d at 1072.

¶112
In my view, the same reasoning applies in this case. Here, as
in Demetry, the Commission's dismissal and
closure orders did not determine the legal rights of either
Masterpiece or Scardina. Nor did those orders bear any
indicia of finality because, as in Demetry, there
had been "no hearing on, or adjudication of, the merits
of the charge." Id.

¶113
Accordingly, Scardina could not have pursued the appeal to
the court of appeals that the majority says she should have
filed because that court would not have had jurisdiction to
hear such an appeal.

¶114
In so concluding, I am not persuaded otherwise by
Masterpiece's and Phillips's reliance on Agnello
v. Adolph Coors Co., 689 P.2d 1162 (Colo.App. 1984)
("Agnello I"), and Agnello v. Adolph
Coors Co., 695 P.2d 311 (Colo.App. 1984)
("Agnello II"). In those related cases,
Agnello had filed a charge alleging that Coors had
discriminated against her because of a physical handicap.
Agnello I, 689 P.2d at 1164. The Division found
probable cause, and conciliation was commenced under CADA.
Id. There, unlike here, the conciliation process was
successful and resulted in an agreement between
Coors and the Division by which an independent physician
would determine Agnello's capabilities for the position
for which she had applied. Id. Although Agnello
apparently did not consent to be bound by this determination,
she agreed to cooperate and participate in the independent
physician's evaluation. Id. Ultimately, the
physician made a determination adverse to Agnello, she
objected to that determination, and the matter was referred
back to the director, who found that Coors's actions
satisfied its obligations under the conciliation agreement
and CADA. Id.

¶115
Agnello then appealed to the Commission, which approved and
confirmed the agreement, finding that the process to which
the Division and Coors had

agreed was proper and did not ignore CADA's protections
for persons with disabilities. Id. Agnello then
appealed to the court of appeals, which accepted
jurisdiction. Id.; see also Agnello II, 695
P.2d at 313 (noting that because the conciliation efforts
under CADA were successful, the district court could not
acquire jurisdiction and an independent action based on the
alleged CADA violation could not be brought).

¶116
In my view, Agnello I and Agnello II are
nothing like the present case. There, unlike here, the
conciliation process was successful. Moreover, there, unlike
here, the charging party participated in the conciliation
process, although she did not agree to be bound by it. Here,
in contrast, the settlement at issue was kept secret from
Scardina. Indeed, Masterpiece and Phillips expressly resisted
Scardina's intervention in the federal action before
settling that action without providing Scardina with either
notice or an opportunity to be heard. And unlike here, the
conciliation process and review by the Commission in
Agnello I and Agnello II resulted in a
decision on the merits finding no discrimination.
Accordingly, the administrative process in those cases
indisputably resulted in a final order over which the court
of appeals division could exercise jurisdiction.

¶117
Even if Scardina could have appealed and the court of appeals
could have exercised jurisdiction over such an appeal,
however, it is not clear to me what such an appeal would have
entailed. Under the majority's apparent view, Scardina

would effectively have been forced to appeal the confidential
settlement agreement between the Division and Masterpiece, in
which she was not involved and which presumably required the
dismissal of the charge at issue. This, in turn, would have
forced Scardina to challenge the terms of that settlement
agreement, even though she has never seen it.

¶118
On this point, I take no comfort in an argument that Scardina
can appeal the fact that the Commission dismissed and closed
her case without her knowledge, participation, and consent
and without issuing a ruling on the merits. For the reasons
set forth above, I perceive no statutory basis for an
argument that once the Commission sets a hearing on the
merits, it can never settle over the charging party's
objection and must instead proceed through the hearing and
issue a ruling on the merits. Moreover, I am not convinced
that the question that the majority believes Scardina should
have raised on appeal necessarily involves a purely legal
issue, as the majority seems to assume. See Maj. op.
¶¶ 36, 59. Rather, I believe that the question may
well implicate the facts and circumstances leading to the
settlement agreement and the terms of that agreement.
Scardina, as a stranger to that agreement, however, would
have had no ability to address those issues in an appeal of
the Commission's Closure Order.

¶119
For all of these reasons, I would conclude that the district
court, in fact, had jurisdiction and the authority to
consider Scardina's claim.

¶120
The question for me thus becomes whether Scardina exhausted
her administrative remedies and, if not, whether any failure
to do so constituted a jurisdictional default. These are the
procedural issues that the parties actually litigated before
us, and I turn to them next.

C.
Scardina Exhausted Her Administrative Remedies

¶121
As an initial matter, I acknowledge our prior case law
stating, albeit with limited or no analysis, that the failure
to exhaust administrative remedies is jurisdictional.
See, e.g., Thomas v. Fed. Deposit Ins.
Corp., 255 P.3d 1073, 1077 (Colo. 2011); State v.
Golden's Concrete Co., 962 P.2d 919, 923 (Colo.
1998). Although I question whether those cases are correct on
that point, see Santos-Zacaria v. Garland, 598 U.S.
411, 417 (2023) ("Exhaustion is typically
nonjurisdictional ...."); see also Wood, 255
P.3d at 1140 ("Although the legislature has the power to
limit courts' subject matter jurisdiction, we have held
that such limitations must be explicit."), I need not
reach that question here because I believe that Scardina
exhausted her administrative remedies, as the Commission
expressly found in its Closure Order. (Notably, neither
Masterpiece nor Phillips has ever challenged the
Commission's finding in this regard, which apparently was
a byproduct of the settlement to which Masterpiece and
Phillips had agreed. Accordingly, I believe that there are
legitimate grounds to conclude that Masterpiece and Phillips
waived any argument that Scardina had failed to exhaust her
administrative remedies. For

purposes here, however, I will assume without deciding that
they did not waive this argument, and I will address it on
its merits.)

¶122
At the time relevant here, section 24-34-306(14), C.R.S.
(2019), provided, in pertinent part, "No person may file
a civil action in a district court in this state based on an
alleged discriminatory or unfair practice prohibited by parts
4 to 7 of this article without first exhausting the
proceedings and remedies available to him under this part
3," subject to exceptions not applicable in this case.
(The legislature has since excluded claims of discrimination
in public accommodations from the list of claims for which
administrative remedies must be exhausted. See Ch.
271, sec. 1, § 24-34-306(14), 2023 Colo. Sess. Laws
1613, 1613.)

¶123
Here, I believe that our analysis of the exhaustion question
is quite simple because the Commission itself found in its
March 22, 2019 Closure Order, "[A]ll administrative
proceedings under part 3 of article 34 of title 24, C.R.S.
have been exhausted." As noted above, neither
Masterpiece nor Phillips has ever challenged this finding,
and I do not believe that it is appropriate for them to rely
on those portions of the Commission's dismissal and
closure orders that they like while ignoring those portions
that they do not. In addition, I perceive no basis on which
to contest the Commission's conclusion that its own
administrative proceedings have been exhausted. For this
reason alone, I would conclude that Scardina exhausted her
administrative remedies.

¶124
Even were there a viable question as to whether Scardina had
exhausted these remedies, however, I would conclude that she
did so.

¶125
"The doctrine of administrative exhaustion requires a
party to pursue available statutory administrative remedies
before obtaining judicial review of a claim."
Thomas, 255 P.3d at 1077. This doctrine (1) promotes
"the efficient use and conservation of judicial
resources, by ensuring that courts intervene only if the
administrative process fails to provide adequate
remedies"; and (2) "enables an agency to make
initial determinations on matters within its expertise,
identify and correct its own errors, and develop a factual
record that will benefit the court if satisfactory resolution
cannot be reached through the administrative process."
Id.

¶126
Here, the administrative proceeding itself indisputably came
to an end when the Commission entered its dismissal and
closure orders. The question thus becomes whether Scardina
failed to exhaust her administrative remedies by not
appealing those orders to the court of appeals. For the
reasons set forth above, I do not believe that the court of
appeals had jurisdiction to consider such an appeal, nor do
CADA or its implementing regulations require an appeal in
these circumstances. Accord Maj. op. ¶¶
21, 42 n.8. Accordingly, in my view, there was nothing
further for Scardina to do to exhaust her administrative
remedies, and for the reasons set forth in Demetry,
752 P.2d at 1072, I believe that she was entitled to proceed
to file a claim in district court.

III.
Conclusion

¶127
Because (1) I do not believe that it was proper for the
majority to conceive, develop, and then dispose of this case
based on an argument that no party presented; (2) I believe
that the district court had jurisdiction and the statutory
authority to hear this case; and (3) Scardina exhausted her
administrative remedies, I would reject Masterpiece's and
Phillips's procedural challenges and reach the merits of
this case.

¶128
For these reasons, and because I have significant concerns
about the substantive and procedural consequences of the
majority's ruling, I respectfully dissent.

---------

[1] We granted certiorari to review the
following issues:

1. Whether Scardina's CADA claim is barred because
Scardina did not appeal the Commission's dismissal of the
administrative complaint before suing Masterpiece Cakeshop
Inc. and Phillips.

2. Whether the decision by Masterpiece Cakeshop Inc.
and Phillips not to create a pink cake with blue frosting
that was to be used to celebrate a gender transition violated
CADA's prohibition on transgender-status
discrimination.

3. Whether the decision by Masterpiece Cakeshop Inc.
and Phillips not to create a pink cake with blue frosting
that was to be used to celebrate a gender transition was
protected by the First Amendment.

[2] Though section 24-34-306(14) still
requires administrative exhaustion for most CADA claims, an
amendment in 2023 excluded claims of discrimination in places
of public accommodation from this requirement. Ch. 271, sec.
1, § 24-34-306(14), 2023 Colo. Sess. Laws 1613,
1613.

[3] In addition to triggering deadlines
for both of the administrative agencies responsible for
handling these claims, the filing of a charge of
discrimination with the Division also started the clock on a
180-day period during which Scardina was required to maintain
her charge in the administrative process and could not seek
to pursue a claim in district court. However, 180 days after
she filed her charge with the Division, she was entitled to
request and receive a right to sue letter and to file a claim
in district court, so long as the Commission had not yet
issued a Notice of Hearing. § 24-34-306(11),
(15).

[4] These extensions are not explicitly
documented in the record, but the district court's
findings of fact conclude that "[b]oth parties requested
jurisdictional extensions of time, ultimately extending the
[Division]'s jurisdiction until October 13, 2018."
This finding is supported by an exchange at trial between the
court and Scardina's counsel, in which counsel provided
the judge with documents indicating that the extensions were
granted. Because it is supported by the record, we defer to
the trial court's factual finding regarding these
extensions. See People v. Johnson, 2024 CO 47,
¶ 22, 549 P.3d 1008, 1014 ("We accept and defer to
a court's factual findings unless they are clearly
erroneous or draw no support from competent evidence in the
record.").

[5] We need not decide whether section
24-34-306's constraint on when a district court may hear
a CADA claim is "jurisdictional"; we need only
determine whether section 24-34-306 imposes limits,
regardless of their character, that would vindicate
Masterpiece's assertion that the district court could not
properly hear Scardina's claim. Thus, to the extent we
use the term 'jurisdiction' throughout this opinion,
we refer only to the language of section 24-34-306 and do not
intend to invoke the underlying legal significance of this
term.

[6] Though they are both tasked with
enforcing CADA, the Division and the Commission are distinct
entities that engage with a discrimination complaint at
different stages of the procedures described in section
24-34-306. See § 24-1-122(2)(h), C.R.S. (2024)
(listing the Division and the Commission as separate entities
within Colorado's Department of Regulatory Agencies);
see also Colo. Civ. Rts. Div., The Complaint
Process, https://ccrd.colorado.gov/the-complaint-process
[https://perma.cc/3UUD-XSU8] ("The Commission is a
separate and distinct body from the Colorado Civil Rights
Division.").

[7] The "charges" that the
notice and complaint require the respondent to answer are the
charges filed by the "person claiming to be aggrieved by
a discriminatory or an unfair practice." §
24-34-306(1)(a)(I).

[8] Masterpiece argues that section
24-34-306(14)'s exhaustion requirement mandated that
Scardina pursue her right to appeal pursuant to section
24-34-307 before filing a district court suit because the
provision on judicial review and enforcement is included
within "this part 3." We disagree. True, section
24-34-307 is included in Part 3 of Title 24. But subsection
306(14) explicitly limits its exhaustion requirement to
"administrative remedies." The right to review of
agency decisions in the court of appeals, as described by
section 24-34-307, is not a part of administrative remedies,
but rather is a separate appellate right.

[9] We refer to this process under
subsection 306(15) as the earliest moment a claim can move
from administrative review to district court because of the
time the administrative review often takes. In this case, for
example, the Division issued its probable cause finding more
than a year after Scardina filed her initial claim. The
Commission served its notice of a formal hearing almost 450
days after Scardina filed her initial claim. CADA entitled
Scardina to request a right to sue letter, moving from the
administrative process to the district court, at any time
from 180 days after she filed her claim with the Division up
until the day that the Commission took up the claim by
serving notice of the formal hearing.

[10] The current version of section
24-34-306 has eliminated the possibility of extensions and
simply sets the timeline at 450 days. § 24-34-306(11),
C.R.S. (2024).

---------